Jon F. Monroy, SBN 51175
Jennifer E. Gysler, SBN 143449
MONROY, AVERBUCK & GYSLER
32123 Lindero Canyon Road, Ste 301
Westlake Village, CA 91361
(818) 889-0661 Fax (818) 889-0667

Attorneys for Defendants,
DEPUTY UPCHURCH, DEPUTY ZUNIGA,
LT. MOSQUERA, SHERIFF JIM McDONNELL
(erroneously sued as Chief J. McDonnel),
DEPUTY F. ABRIL, DEPUTY J. SANFORD,
DEPUTY M. TRIMBLE II, NURSE F. MOSCOSO;
LT. A. SALINAS, SGT. GASATAYA, SGT. R.
GARCIA, SGT. J. MORALES,
SGT. ROBERT THOMPSON (erroneously sued as
"Sgt. Toms"); DEPUTY M. ENRIQUEZ, JR.,
DEPUTY J. GARIBAY, DEPUTY D. HAAS,
DEPUTY A. INES, DEPUTY J. LEW,
DEPUTY RODRIGUEZ, DR. N. TEOPHILOV,
DR. B. FELAHY, DR. S. LITTLE, DR. A. PRYOR,
DR. Y. SILVANSKAYA, DR. K. VIVO,
DR. P. ZOLNOUNI, NURSE J. ANDERSON,
NURSE O. LUNA, NURSE B. MENEFEE,
NURSE C. TUTT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ROBERT VOSKANYAN, | ) Case No.: CV 15-6259 MWF (KES) |
| | ) |
| Plaintiffs, | ) NOTICE OF AND MOTION FOR |
| | ) SUMMARY JUDGMENT OR |
| vs. | ) PARTIAL SUMMARY JUDGMENT; |
| | ) POINTS & AUTHORITIES; |
| L.A. SHERIFFS et al. | ) DECLARATION OF JENNIFER E. |
| | ) GYSLER; DECLARATIONS OF DR. |
| Defendants | ) TEOPHILOV, NURSE MENEFEE, |
| | ) DEPUTY INES, DEPUTY ENRIQUEZ |
| | ) JR., SGT. GARCIA, SGT. |
| | ) GASATAYA, LT. MOSQUERA, |
| | ) DEPUTY HAAS, DEPUTY LEW, |
| | ) DEPUTY UPCHURCH; JIM |
| | ) McDONNELL: DEPUTY GARIBAY. |

Motion for Summary Judgment / Partial Summary Judgment - 1

_____   EXHIBITS

DATE:  June 2, 2020
TIME:  10am
DEPT.:  Courtroom 6D

[A meet and confer took place prior to the filing of the motion.]

TO PLAINTIFF IN PRO PER:

PLEASE TAKE NOTICE that on June 2, 2020, at 10:00am, in Courtroom 6D, of the above-entitled Court, located at 411 W. 4th St., Santa Ana, California, defendants will move this Court for summary judgment or partial summary judgment in favor of the County Defendants and against Plaintiff in the above-entitled matter, pursuant to Federal Rules of Civil Procedure 56(c), on the grounds there are no genuine issues as to any material fact and that moving parties are entitled to judgment as a matter of law as to the following causes of action and claims, as contained within the Fourth Amended Complaint (Doc. 166):

(1) Count I – Cruel and unusual punishment in violation of the Eighth Amendment against Sheriff McDonnell; A. Bandino, H. Mosquera, A. Salinas, Sgt. Gasetaya, R. Garcia, J. Morales; Sgt. Toms; F. Abril, P. Borja, M. Enriquez Jr., J. Garibay, D. Haas, A. Ines, J. Lew, "Rodriguez", J. Sanford, M. Tremble, Dr. A. Pryor, Dr. Silvanskaya, Dr. K. Vivo, Dr. Zolnouni, Nurse Anderson, Nurse Luna, Nurse Menefee, Nurse Tutt;

(2) Count II – Denial of Due Process under the Fourteenth Amendment, against, Sheriff McDonnell, A. Bandino, H. Mosquera, A. Salinas, Sgt. Gasataya, R. Garcia, J. Morales, Sgt. Toms, F. Abril, P. Borja, M. Enriquez Jr., J. Garibay, D.Haas, A. Ines, J. Lew, Rodriguez, J. Sanford, M. Tremble, A. Zuniga, C. Upchurch, Dr. Teophilov, Dr. Felahy, Dr.

Motion for Summary Judgment / Partial Summary Judgment - 2

1  Little, Nurse Moscoso, Dr. Pryor, Dr. Silvanskaya, Dr. Vivo, Dr. P.

2  Zolnouni, Nurse Anderson, Nurse Luna, Nurse Menefee, Nurse Tutt.

3  The basis for the motion will be that the Eighth Amendment does not apply

4  to Plaintiff because he was a pretrial detainee at the relevant times, that the County

5  Defendants did not violate Plaintiff's civil rights under the Fourteenth Amendment,

6

7  and that the individual defendants are also entitled to qualified immunity.

8  This Motion is based upon this Notice of Motion, the accompanying

9

10  Memorandum of Points and Authorities, the Declaration of Jennifer Gysler, the

11  Declaration of Dr. Teophilov, the Declarations Of Nurse Menefee, Deputy Ines,

12  Deputy Enriquez Jr., Sgt. Garcia, Deputy Haas, Deputy Lew, Deputy Upchurch,

13

14  Sgt. Garcia, Sgt. Gasataya, Lt. Mosquera, Sheriff Jim McDonnell; attached

15  exhibits; the Statement of Uncontroverted Facts and Conclusions of Law, the

16  Request for Judicial Notice, all pleadings and papers on file in this action, and

17

18  upon such other matters as may be presented to the Court at or before the hearing

19  on this motion.

20  DATED: April 17, 2020                    MONROY, AVERBUCK & GYSLER

21

22

23  _Jennifer E. Gysler_____.

24  JON F. MONROY

25  JENNIFER E. GYSLER
   Attorneys for Defendants

26

27

28

Motion for Summary Judgment / Partial Summary Judgment - 3

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................7

I. STATEMENT OF FACTS .......................................................................8

    A. Plaintiff Is Arrested And Booked Into Jail. .....................8

    B. Plaintiff Is Assaulted By Other Inmates. .........................8

    C. Plaintiff's Subsequent Medical Treatment. ......................9

    D. Other Issues. ...................................................................12

II. SUMMARY JUDGMENT STANDARDS. ...............................12

III. ARGUMENT ..............................................................................13

    A. Defendants Are Entitled To Summary Judgment on Count 1, Because The Eighth Amendment Does Not Apply to Pretrial Detainees. ...............................................13

    B. Defendants Are Entitled To Summary Judgment On Count 2, Plaintiff's Fourteenth Amendment Claim. ...............14

        1. Defendants did not violate the Fourteenth Amendment in failing to prevent inmates from assaulting plaintiff; at a minimum, they are entitled to qualified immunity. ...............14

            a. Plaintiff must establish that defendants acted with reckless disregard. ...............14

            b. The officers did not act with reckless disregard for plaintiff's safety. ...............15

            c. At a minimum, defendants are entitled to qualified immunity because any rights violation was not clearly established in July 2018. ...............16

        2. Defendants' handling of plaintiff's medical care did not violate the Fourteenth Amendment—and at a minimum, they are entitled to qualified immunity. ...............18

            a. Plaintiff's medical care claim requires him to prove deliberate indifference. ...............18

            b. The undisputed facts establish that defendants were not deliberately indifferent—they provided extensive medical care. ...............19

c.    At a minimum, defendants are entitled to qualified
      immunity.                                                  20

3.    Defendants did not violate the Fourteenth Amendment
      based on any other Plaintiff's other allegations.         21

IV.   CONCLUSION.                                                23

SUPPORTING DECLARATION OF JENNIFER E GYSLER.............................25

# TABLE OF AUTHORITIES

**Statutes**                                                               **Page**

*-Federal Rules of Civil Procedure, Rule 56(c)(d)*       *13*

**Decisional Authority**

*Adickes v. S.H. Kress & Co. 398, U.S. 144 (1970)*      *13*

*Alonzo v. Sguyres, 2002 WL 1880736 (N.D. Cal. Aug. 9, 2002)*   *22,fn2*

*Ashcroft v. al-Kidd 563 U.S. 731 (2011)*      *16*

*Baltoski v. Pretorius, 291 F.Supp.2d 807 (N.D. Ind. 2003)*   *22,fn6*

*Bell v. County of Los Angeles, No. CV07-8187-GWЄ*
     *(CD Cal. Aug. 25, 2008)*       *22,fn6*

*Byrd v. Maricopa County Board of Supervisors 845 F.3d 919*
     *(9th. Cir. 2017)*       *13*

*Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016)*   *14,15*

*Celotex Corp. v. Catrett, 477 U.S. 317 (1986)*       *13*

*Estelle v. Gamble 429 U.S. 97 (1976)*       *18*

*Flick v. Alba, 932 F.2d 728 (9th Cir. 1991)*       *22,fn2*

*Gordon v. County of Orange 888 F.3d 1118 (9th Cir. 2018)*   *18,19*

*Horton by Horton v. City of Santa Maria, 915 F.3d 592*
     *(9th Cir. 2019)*       *15*

*Mann v. Adams, 855 F.2d 639 (9th Cir.), cert. denied,*
     *488 U.S. 898 (1988)*       *22,fn2*

*Morris v. Newland, 2007 WL 707525 (ED Cal. Mar. 6, 2007),*
     *Adopted 2007 WL 987846 (ED Cal. Mar. 30, 2007)*   *22,fn2*

*Mullenix v. Luna, 136 S.Ct. 305 (2015)*       *17*

*Pearson v. Callahan, 555 U.S. 223 (2009)*       *17*

*Ramirez v Galaza 334 F.3d 850 (9th Cir. 2003),*
     *Cert. denied 541 U.S. 1063 (2004)*       *22,fn2*

*Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005)*       *22,fn2*

*Shafer v. Cty of Santa Barbara 868 F.3d 1110 (9th Cir. 2017)*   *17*

*White v. Pauly, 137 S.Ct. 548 (2017)*       *17*

*White v. Wesby, 138 S.Ct. 577 (2018)*       *17*

## MEMORANDUM OF POINTS AND AUTHORITIES

Pro per plaintiff Robert Voskanyan, alleges Eighth and Fourteenth Amendment violations by thirty defendants during his incarceration as a pretrial detainee at the Los Angeles County Jail.  Plaintiff's rambling complaint alleges that deputies allowed him to be assaulted by other inmates, that during the ensuing months he was denied proper medical care, and that the defendants took his personal property, kept him locked in his cell, and refused to let him file grievances.  These claims fail as a matter of law, for multiple reasons.

*First count.*  Defendants are entitled to summary judgment on plaintiff's first count, because the Eighth Amendment does not apply to pretrial detainees, which plaintiff indisputably was at all relevant times. (SUF 1)

*Second count.*  Defendants are entitled to summary judgment on plaintiff's second count, because they did not violate the Fourteenth Amendment.  Medical records establish that plaintiff received daily treatment in July and August 2015, and frequent medical care throughout the following months.  This care included x-rays, CT scans, a full neurology work-up, multiple hospital stays, dental visits, and extensive mental health care.  The evidence also establishes that lieutenants and deputies did their best to work with plaintiff despite his difficult behaviors:  They provided referrals to medical or mental health, and called and responded to plaintiff's numerous "man-down" calls for emergency care.  Moreover, it is

undisputed that some of the defendants who plaintiff contends were at fault were not even present or involved in the conduct at issue.  Finally, even if there were some violation of plaintiff's constitutional rights, the law as to such violation was not clearly established in 2015.

## I.      STATEMENT OF FACTS

### A.      Plaintiff Is Arrested And Booked Into Jail.

Plaintiff was arrested for kidnapping during a carjacking in June 2015 and ultimately booked into Men's County Jail.  (SUF 3)  At a medical and mental health screening at the Inmate Reception Center (IRC), he denied a history of mental health issues, stated he had a history of high blood pressure and an open wound/abscess, and has a history of drug use and/or alcohol use. (SUF 4) Four days later he asked to see mental health due to a history of anxiety and sometimes felt depressed and was unable to sleep. (SUF 5)

### B.      Plaintiff Is Assaulted By Other Inmates.

Plaintiff alleges that other inmates physically assaulted him in July 2015. (SUF 6)  Plaintiff originally reported that he was assaulted by five to seven people, or four people, and changed the number to 30 or 40.  (SUF 8)  He alleges that two deputies watched the assault, and that Deputies Ines and Enriquez and Sergeant Garcia "left [him] to die . . . ." (Fourth Amended Complaint ("Complaint"), p. 14:23-15:1-2.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.     Plaintiff's Subsequent Medical Treatment.

Plaintiff contends that after inmates assaulted him, the defendant deputies and medical personnel ignored his needs, and that he suffered retaliation for complaining.  (Complaint, p. 18-35.)  His allegations are too voluminous to detail here, but we provide an overview.  This overview also includes some of the extensive evidence of examinations, diagnostic testing, medications, and observations of plaintiff in response to his medical complaints.

After the alleged assault, plaintiff complained of fractured teeth, a broken nose, broken jaw and broken ribs.  (Complaint p. 16:10-16)  He was seen in the clinic, and then at urgent care.  (SUF 10-13.)  Although plaintiff claims that urgent care doctor "Dr. Vivo" (actually a Physician's Assistant) failed to provide him with medical care (Complaint p.15:14-18), it is undisputed that pain medication was ordered for him and facial x-rays taken (SUF 12,15).

Plaintiff alleges that a sergeant ordered him to be taken to the hospital when he left urgent care, but that the hospital did not have room, so temporarily transferred him back to a clinic.  (Complaint p. 15:20-26)  Plaintiff contends that Sgt. Gasataya instead hid him in a "keep away cell."  (Complaint, p. 15:20-16:2.)

Plaintiff contends that he daily begged Deputies Upchurch, Haas and Borja for help because of his injuries.  (Complaint, p.16:8-10.)  He contends he was

starving from July 7 to July 16, 2015, because of his damaged jaw and teeth, and that deputies refused to take him to the medical clinic. (Complaint, p. 16:3-16.)

On July 14, 2015, plaintiff was found non-responsive in his cell. (Complaint, p.16:19.) Deputies sent him to the LAC USC Medical Center. (Complaint, p. 16:17-23.)   Chest and pelvic x-rays revealed no fractures. (SUF 12, 18, Exh G, p. 48 – x-ray findings)

On July 16, 2015, plaintiff was again found non-responsive in his cell and taken to the clinic. (Complaint, p.16:26-27)  There, he saw Dr. Little and was "immediately transferred to 7100 to a bottom bunk" because of his injuries. (Complaint, p. 16:24-28.)

On July 18, 2015, plaintiff was "again man down" (i.e., reported to need immediate medical care); a nurse took him to a clinic on a gurney. (Complaint, p. 17.)  Plaintiff contends his medical and court appointments were cancelled. (*Id.*.)

Plaintiff contends that on July 20, 2015, he was seen by Dr. Zolnouni, who said he was okay without an examination. (Complaint, p.17:16-25)

All told, between July 7, 2015 and September 2015, plaintiff received medical care every day. (SUF 11 through 71)  Plaintiff also received monthly mental health assessments between September and December 2015. (SUF 72, 75, 82.)  In those assessments, he reported not eating or drinking and was found to be refusing medicine, and he claimed no one was helping him and that he was not

getting a soft diet.  (SUF 77,78, 84)  He was deemed to be not at risk and not in need of a higher level of care at that point.  (SUF 80)

In December 2015, plaintiff was placed on suicide-risk precautions because he claimed he was not receiving dental care and asked whether he had to "go suicidal" to get what he wanted.  (SUF 85) Plaintiff's dissatisfaction was that he wanted crowns instead of extractions.  In a psychological assessment in January 2016, plaintiff described himself as a drug addict, hearing voices, cannot contract for safety, and had been arrested countless times for drugs and four times for fraud (Exhibit I, p. 60-61)  He was started on medications and discharged from the suicide risk precautions with scheduled follow-up.  (Exhibit I, p. 61)

Plaintiff was admitted to correctional treatment center housing in mid-January 2016.  (SUF 93.)  Although he claimed to be unfit to stand trial, a clinician assessed that he was exaggerating his symptoms, had poor insight, and poor judgment.  (Exhibit I, p. 50.)  He continued to be seen several times a month by mental health professionals.  (Decl. of Dr. Teophilov, in general, SUF 91-103)  He also underwent a battery of diagnostic studies including MRI's of the brain and spine, and nerve conduction studies, because there continued to be "man down" episodes.  (SUF 94)  The MRI's found no significant abnormalities.  (SUF 94)

Plaintiff was uncooperative and recalcitrant at times, refusing medications, refusing to eat and refusing medical appointments.  (SUF 99,100)

Plaintiff contends that he sent letters to Sheriff Jim McDonnell about all this
and had his family make phone calls to Sheriff McDonnell.  (Complaint, p. 35.)
But there is no evidence that Sheriff McDonnell received any of these
communications or was aware of plaintiff's claims.  (SUF123,124)

**D.     Other Issues.**

The jail has specific deputies assigned to collect grievances, which inmates
must file within a limited time period of the incident giving rise to the grievance.
(SUF 112)  Plaintiff has filed more than 176 grievances since July 2015.
(Complaint, p.13:26.)  He alleges generally that the grievances were not handled to
his satisfaction, but does not specify which ones he believes were mishandled.

Plaintiff further contends that his personal property was taken at various
times without his permission and that he was denied family visits and attorney
visits during incarceration.  (Complaint, p.20:3-5.)

**II.     SUMMARY JUDGMENT STANDARDS.**

Summary judgment is proper where "there is no genuine issue as to a
material fact and that the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).)  A defendant can win summary judgment on a plaintiff's
claim either by negating an essential element of the plaintiff's claim or by
demonstrating the absence of evidence for an essential element of the plaintiff's

claim.  *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 158-160, (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)

A court may grant summary judgment on less than the entire case—i.e., on one claim or defense. Fed. R. Civ. P. 56(a).  The court also may issue an order "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just . . . ." Fed. R. Civ. P. 56(d).

## III.   ARGUMENT

### A.   Defendants Are Entitled To Summary Judgment on Count 1, Because The Eighth Amendment Does Not Apply to Pretrial Detainees.

Plaintiffs' first claim alleges unusual punishment in violation of the Eighth Amendment.  (Complaint, p. 36.)  That claim fails on its face, because plaintiff was a pre-trial detainee during the entire time period at issue.  (Sep. Stmt. ___.)  It is well-settled that the Eighth Amendment does not apply to pre-trial detainees.  *See, e.g., Byrd v. Maricopa County Board of Supervisors*, 845 F.3d 919, 924, n.2 (9th Cir. 2017).  Defendants therefore are entitled to summary judgment on plaintiff's Eighth Amendment claim.

**B.      Defendants Are Entitled To Summary Judgment On Count 2, Plaintiff's Fourteenth Amendment Claim.**

Plaintiff's second count alleges that the defendants violated his Fourteenth Amendment rights by not preventing him from being assaulted by other inmates, denying him medical care, taking his personal property, locking him in his cell, and not allowing him to file grievances.  Plaintiff cannot prove any of these claims under the governing legal standards.

**1.      Defendants did not violate the Fourteenth Amendment in failing to prevent inmates from assaulting plaintiff; at a minimum, they are entitled to qualified immunity.**

Plaintiff claims that Deputies Ines and Enriquez and Sergeant Garcia stood by while other inmates assaulted him in July 2015, and that their inaction violated the Fourteenth Amendment.  But the undisputed evidence establishes that these defendants did not violate the Fourteenth Amendment or, at the very least, are entitled to qualified immunity.

**a.      Plaintiff must establish that defendants acted with reckless disregard.**

Claims against individual officers for failure to protect a pretrial detainee are governed by a "reckless disregard" standard.  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

Under that standard, a plaintiff must prove four elements:  "(1) The defendant made an intentional decision with respect to the conditions under which

the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Castro*, 833 F.3d at 1071.

Put another way, a court must ask "whether there was 'a substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the officer did not take, thus causing the injury that the plaintiff suffered.'" *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019). This is a purely *objective* standard: There is no separate inquiry into an officer's subjective state of mind." *Id.*

### b. The officers did not act with reckless disregard for plaintiff's safety.

The undisputed facts refute plaintiff's allegation that deputies Enriquez and Ines and Sgt. Garcia stood by while inmates assaulted him.

Sgt. Garcia was not on duty at the time of the assault; he simply signed off on the collection and storage of evidence later in the day. (SUF 128, Decl. Sgt. Garci, p.1:17-21.)

Deputy Enriquez was assigned to the control booth, on a light duty assignment while recovering from an injury. (SUF 129) Under that duty, he was

not to have any contact with inmates and, indeed, there is no evidence that he did. (SUF 129.)  He simply received a call from the clinic about plaintiff having facial injuries and contacted another deputy to investigate the assault.  (Declaration of Deputy Enriquez, paragraph 3)

Deputy Ines was on prowler deputy, not stationed in the dorm where the incident occurred.  (Decl. Deputy Ines, paragraph 2.)  When he became aware of the incident, he and others escorted plaintiff out of the dorm and gave a statement to the investigating deputy.  (Decl. Deputy Ines, paragraph 3,4)  As discussed below, plaintiff received medical care after the incident.

In sum, there is no evidence raising a triable issue as to whether any of these deputies committed any constitutional violations.

> **c.    At a minimum, defendants are entitled to qualified immunity because any rights violation was not clearly established in July 2018.**

Qualified immunity shields public officials from suit unless they violate a right that was "'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *al-Kidd*, 563 U.S. at 743. The qualified immunity analysis has two prongs:  (1) whether the defendants violated a constitutional right; and (2) whether the constitutional right

was "clearly established" at the time of the incident.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Even if there were a fact question as to a constitutional violation here, Deputies Enriquez and Inez and Sgt. Garcia would be entitled to qualified immunity under the "clearly established" prong.

A right is "clearly established" only if "'*every* reasonable official would have understood that what he is doing violates that right.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis added).  That showing "requires a high degree of specificity"—i.e., a prior case where "an officer *acting under similar circumstances* . . . was held to have violated the Fourth Amendment."  *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted); *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (emphasis added); *see also Mullenix*, 136 S. Ct. at 308 (defendants are entitled to qualified immunity unless "'the violative nature of *particular* conduct [was] clearly established'").

It is the *plaintiff's* burden to meet this standard.  *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).  Meeting this standard requires plaintiffs to identify "existing precedent [that] '*squarely governs*' the *specific* facts at issue."  *Kisela,* 138 S. Ct. at 1153 (emphasis added).

As relevant here, no existing precedent holds that officers commit a constitutional violation in failing to head off an assault *that they were not aware of*

1   *until after the fact*, much less that a deputy who is on a light duty assignment and

2   not *allowed* to have contact with inmates (Deputy Enriquez) must directly

3   intervene in an ongoing assault.  Indeed, it is undisputed that the deputies here

4   were not stationed in the dorm at the time of the assault, and therefore did not see

5   the assault occur.  (SUF 9.)  They responded once they learned about it.  (SUF 9.)

6   Deputies Enriquez and Inez and Sergeant Garcia therefore are entitled to

7   qualified immunity on plaintiff's failure-to-protect theory.

8   **2.   Defendants' handling of plaintiff's medical care did not violate the Fourteenth Amendment—and at a minimum, they are entitled to qualified immunity.**

9   **a.   Plaintiff's medical care claim requires him to prove deliberate indifference.**

10  To establish a claim for allegedly inadequate medical care, a pretrial

11  detainee must show that the defendants exhibited "deliberate indifference" to his

12  "serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

13  This standard is "akin to reckless disregard."  *Gordon v. County of Orange*,

14  888 F.3d 1118 at 1125 (9th Cir. 2018).

15  An inadequate medical care claims has the same elements as a failure-to-

16  protect claim:  The plaintiff must show that "(1) the defendant made an intentional

17  decision with respect to the conditions under which the plaintiff was confined;

18  (2) those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* (quoting *Castro*, 83 F.3d at 1070).

Once again, plaintiff cannot raise a triable issue of fact as to the existence of a constitutional violation and, in any event, qualified immunity applies.

> **b.      The undisputed facts establish that defendants were not deliberately indifferent—they provided extensive medical care.**

The undisputed evidence is that the defendants provided appropriate medical care and treatment in their clinical judgment.  Dr. Teophilov, the Chief Physician for Correctional Health Services ("CHS"), for the County of Los Angeles Sheriff's Department, and board-certified physician who reviewed the plaintiff's records and personally saw the plaintiff, has opined that the care provided to plaintiff was appropriate and that it caused him no injury. (SUF 104, 105, 106)  There is no contrary evidence, and certainly no evidence supporting a conclusion that plaintiffs recklessly disregarded plaintiff's medical needs—the standard that plaintiff must meet to establish the existence of a constitutional violation.

Nor can plaintiff demonstrate that any defendant obstructed or denied medical care.  The undisputed evidence is that plaintiff received ***daily*** medical care in July and August of 2015, and frequent medical care thereafter.  (SUF 11 through 71)  This care included x-rays, head CT scans, nerve conduction studies, and a thorough neurological work up.  (SUF 11 through 71)  Plaintiff also received care for other issues, including blood pressure and unexplained fainting episodes.  (SUF 11 through 71)  Plaintiff spent time at LAC-USC Medical Center and in the jail's hospital wing.  (SUF 86)  Once again, there is no evidence reaching the "reckless disregard" standard here.  That being so, plaintiff cannot establish that the custody defendants committed any constitutional violation.

### c.  At a minimum, defendants are entitled to qualified immunity.

As shown, undisputed evidence establishes that defendants' actions regarding plaintiff's medical care comported with the Fourteenth Amendment.  But even assuming there *was* a triable fact issue as to the constitutionality of their conduct, defendants would be entitled to qualified immunity because any rights violation was not clearly established in 2015-2016, the time period at issue.

Specifically, plaintiff cannot meet his burden of identifying a case where an officer acting under similar circumstances was held to have violated the Fourteenth Amendment.  See __, *ante* (describing governing qualified immunity standard).  No case holds that deputies must force a detainee to go to medical appointments,

eat, or take medications when he refuses, or that it is unconstitutional to move a detainee from a medical floor to a lower level of care when the patient is no longer deemed to need such care.

As a result, defendants are entitled to qualified immunity regardless of whether if a triable fact dispute exists as to whether they committed a constitutional violation.

### 3. Defendants did not violate the Fourteenth Amendment based on any other Plaintiff's other allegations.

Plaintiffs' wide-ranging complaint also alleges a litany of other Fourteenth Amendment violations regarding defendants' handling of his personal property, his grievances, and his visitors.  Defendants are entitled to summary judgment on those theories as well.

Plaintiff filed incident reports about his personal property.  (Exh E Incident Reports, p. 22, 26)  Deputies responded that they only removed trash and contraband when his cell was cleaned. (Exh E Incident Reports)   Doing so was not unconstitutional—safety and hygiene concerns give jails a vested interest in ensuring there is no contraband or excessive trash in cells.

Next, the fact that plaintiff filed more than 176 grievances (Complaint, p.13:26.)  conclusively belies plaintiff's allegation that he was not permitted to file grievances.

As for attorney and family visits, the undisputed record establishes that plaintiff had many.  (See Movement History, Exhibit J.)

Finally, plaintiff's claims against Sheriff McDonnell individually fail, because there is no evidence that Sheriff McDonnell knew anything at all about plaintiff.[1]  There are thousands of inmates at Men's Central Jail.  Sheriff McDonnell, as the top administrator of the jail, necessarily does not see all letters sent to him, nor is he required to be personally involved in every inmate grievance or complaint.  (SUF 123.)[2]

_____

[1] Plaintiff's complaint specifies that Sheriff McDonnell, like all the defendants, "is sued in his individual capacity . . . ."  (Complaint, p. 2.)

[2] Defendants' alleged failure to investigate or otherwise respond to Plaintiff's post-incident complaints do not violate Plaintiff's constitutional rights. "While inmates may enjoy a First Amendment right to file prison grievances, see Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005), inmates have no "separate constitutional entitlement to a specific prison grievance procedure." See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004) (citation omitted). The failure of jail officials to process or to respond to a particular grievance does not violate the Constitution. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir.), cert. denied, 488 U.S. 898 (1988); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Morris v. Newland, 2007 WL 707525, at *7 (E.D. Cal. Mar. 6, 2007), adopted, 2007 WL 987846 (E.D. Cal. Mar. 30, 2007) ("a failure to process a grievance does not state a constitutional violation") (citation omitted); Alonzo v. Sguyres, 2002 WL 1880736, at *1 (N.D. Cal. Aug. 9, 2002) ("Although there certainly is a right to petition the government for redress of grievances (a First Amendment right), there is no right to a response or any particular action.") (citations omitted); see also Baltoski v. Pretorius, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) ("[t]he right to petition the government for redress of grievances, however, does not guarantee a favorable response, or indeed any response, from state officials")." *Bell v. County of Los Angeles*, No. CV 07-8187-GW(E), at *8-9 (C.D. Cal. Aug. 25, 2008)

There are also several named defendants in the Fourth Amended Complaint who are identified as defendants, but here are no factual allegations as to how they violated plaintiff's 14th Amendment rights.  This includes Nurse Anderson [identified in paragraph 31, no factual allegations in complaint]; Dr. Little [alleged to have treated the plaintiff and immediately transferred him to 7100 (medical) to a bottom bunk, paragraph 48]; Sgt. Morales [identified in paragraph 10, no factual allegations in complaint]; Lt. Salinas [alleged to have filed an incident report in conjunction with a Man down episode, paragraph 48]; Deputy Sanford [alleged to have told the plaintiff that the judge was "very mad" because he wasn't going to court, paragraph 51 – not a constitutional violation].

## IV.  CONCLUSION.

The Court should grant summary judgment for defendants or alternatively, grant partial summary judgment on each cause of action as to each defendant.  The plaintiff's medical records and mental health records, as well as the declaration of Dr. Teophilov, demonstrate without question, that plaintiff received more than ample medical care and was followed closely by physicians and medical staff during his time at the Los Angeles County jails.  Similarly, the custody personnel provided an ordinate amount of attention to the plaintiff, attempting to meet his needs regardless of his behavior.

1   DATED:  April 17, 2020                MONROY, AVERBUCK & GYSLER

2

3                                         *Jennifer E. Gysler*

4                                         JON F. MONROY

5                                         JENNIFER E. GYSLER
                                          Attorneys for Defendants
6                                         County of Los Angeles

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUPPORTING DECLARATION OF JENNIFER E GYSLER**

I, Jennifer E. Gysler, hereby declare:

I am an attorney at law duly licensed to practice in the Court of the State of California and the Central District.  My firm is counsel of record for defendants. The following facts are within my own personal knowledge.  I could and would competently testify to them as follows:

1.     Attached to the accompanying Request for Judicial Notice as Exhibit A, is the plaintiff's Fourth Amended Complaint (excluding exhibits).

2.     Attached to the accompanying Request for Judicial Notice as Exhibit B, is the plaintiff's Answer / Joinder to Answer.

3.     Attached hereto as Exhibit C, is a copy of plaintiff's jail booking records as provided by the Los Angeles County Sheriff's Department, kept in the normal course of business.

4.     Attached hereto as Exhibit D, is a copy of shift reports for July 2015, from the Los Angeles County Sheriff's Department, kept in the normal course of business.

5.     Attached hereto as Exhibit E, is a copy of all incident reports regarding Mr. Voskanyan, from the Los Angeles County Sheriff's Department, kept in the normal course of business.

6.    Attached hereto as Exhibit F is a copy of the plaintiff's jail medical records, authenticated by Dr. Teophilov, and kept in the normal course of business.

7.    Attached hereto as Exhibit G, copies of orders, medical forms, medical documents, x-rays and IRC forms, for the plaintiff, from the Los Angeles County Sheriff's Department, kept in the normal course of business.

8.    Attached as Exhibit H, is a copy of the Point of Care medical summary from the plaintiff's jail medical records, authenticated by Dr. Teophilov and kept in the normal course of business.

9.    Filed simultaneously herewith, in an application to seal, as Exhibit I, are plaintiff's mental health records, authenticated by Dr. Teophilov and kept in the normal course of business.

10.    Attached as Exhibit J, is a copy of the movement history for plaintiff from the Los Angeles County Sheriff's Department, kept in the normal course of business.

11.    Attached as Exhibit K, is a copy of the summary of plaintiff's disciplinary records, from the Los Angeles County Sheriff's Department, kept in the normal course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of April, 2020, at Los Angele, California.

Jennifer E. Gysler, declarant.

Motion for Summary Judgment / Partial Summary Judgment - 26